NICOLA T. HANNA
United States Attorney
PATRICK R. SULLIVAN
Assistant United States Attorney
Chief, National Security Division
GEORGE E. PENCE (Cal. Bar No. 257595)
Assistant United States Attorney
Terrorism and Export Crimes Section
       1500 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-2253
       Facsimile: (213) 894-2927
       E-mail:   george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-703-DSF |
| --- | --- |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: 10/29/2018<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the |
| JOHN PATRICE HALE,<br>  aka "Frost K Blizzard," | Hon. DALE S. FISCHER |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney George E. Pence,

hereby files its Sentencing Position.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, the Probation Office's Presentence Investigation Report and Disclosed Sentencing Recommendation Letter, and such further evidence and argument as the Court may permit.

Dated: September 26, 2018        Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 PATRICK R. FITZGERALD
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                      /s/
                                 _____
                                 GEORGE E. PENCE
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendant John Patrice Hale ("defendant"), facing eviction proceedings, made threats to the Los Angeles Sheriff's Department, claiming that he was affiliated with the designated terrorist organization the Islamic State of Iraq and the Levant, also known as ISIS, that he had planted bombs at the Inglewood Courthouse, that those bombs were set to explode, that he or others would shoot law enforcement leaving the courthouse's parking structure, and that it "would be a plus" if the explosives "took part" of the school across the street from the courthouse.  Those threats caused the evacuation of the courthouse and financial loss to several victims.

Defendant later cooperated with law enforcement and pleaded guilty to his crimes.  The government agrees generally with the recommendation of the United States Probation Office and requests that defendant be sentenced to 12 months in prison, serve two years of supervised release, and pay $6,605.31 in restitution, among other terms and conditions of sentencing.

**II.   BACKGROUND**

**A.    The Factual Basis for the Plea Agreement**

At defendant's July 2, 2018 change-of-plea hearing (Dkt. 25), he admitted to the following conduct, as set forth in his Plea Agreement (Dkt. 23):

In or before May 2017, R.E., a real estate broker, commenced legal proceedings in the Inglewood Courthouse in Inglewood, California to evict defendant and others from a residence located in the Central District of California.  In an effort to disrupt those proceedings and to retaliate against R.E., as well as to disrupt his

stepdaughter's employment at Company A, a nation-wide moving and storage resource company, defendant engaged in the following conduct:

        1.   The May 12 and May 16, 2017 Threats Resulting in Evacuations of the Inglewood Courthouse

On May 12 and May 16, 2017, from Los Angeles, California, defendant used the Internet to intentionally convey in writing to the Los Angeles Sheriff's Department ("LASD"), through its Court Services Division website, false and misleading information, namely the following three written threats directed at the Inglewood Courthouse, which defendant transmitted for the purpose of issuing threats and with knowledge that they would be viewed as threats:

     May 12, 2017 Threat

s. Muhammed |

Our brotherhood will celebrate today when allah sets the explosives planted in Inglewood sheriff vehicles at Inglewood court.

All praises due | takbeer | smuhammed@yahoo.com

     First May 16, 2017 Threat

m. Muhammad | Greetings

How did Inglewood sheriff enjoy our ransomware?  Or our brothers shooting at police yesterday at Figueroa and 108th?  Today if Inglewood sheriff serves any notices ISIS will harm one child per notice.  Starting with school across street from Inglewood court.  We have reported our info to your local news.

     Second May 16, 2017 Threat

Item under deputy car.  Impact for half city block.  6 hours to locate it.  At Inglewood sheriff station.  If you have units out better call them back in.

Takbeer!From: talibEmail: talibisis@yahoo.com

Reasonable people could and did believe the false and misleading information concerning explosives referenced in the May 12 and Second May 16, 2017 threats, which, if true would have constituted violations of Title 18, United States Code, Section 2332a, involving weapons of mass destruction.  For example, in response to all three instances of false and misleading information, law enforcement and public officials caused the Inglewood Courthouse to be evacuated, including the Inglewood Courthouse snack bar (the "snack bar"), which purchases and sells goods that travel to California from locations out of state.  The snack bar incurred at least $450.00 in losses due to the closures, thus affecting interstate commerce.

> 2.    The May 15, 2017 Threats that Did Not Result in the Evacuation of the Inglewood Courthouse

On May 15, 2017, from Los Angeles, defendant again used the Internet to intentionally convey in writing to the LASD, through its Court Services Division website, false and misleading information, namely the following threats directed at the Inglewood Courthouse, which defendant transmitted for the purpose of issuing threats and with knowledge that they would be viewed as threats:

> First May 15, 2017 Threat

navid muhammad |All praises due to allah.

You infidels prosecuted our beloved brother Friday and now we will prosecute your officers.  We couldnt trigger our xplosives Friday you still had our brother.  Allah willing we will be able to take out as many officers that pull out your parking structure.  It will be a plus to take part of your american school across the street.  ISIS will have revenge today.  It maybe a headshot from one of our snipers maybe a grenade as they pull out parking building and stop maybe explosive on one of the vehicles we were able to access.  All praises due.  May Inglewood feel our wrath today.  From 830 to 4pm we will destruct Inglewood sheriff. The only safety they will have today is to stay inside

3

today.  If we see any patrol cars leave we will begin our
celebration of revenge.  All praises due.  Takbee! Takbeer!

Allah | infidels | n.muhammad|

Second May 15, 2017 Threat

M. Muhammad |All praises due to allah.

You infidels prosecuted our beloved brother Friday and now
we will prosecute your officers.  We couldnt trigger our
xplosives Friday you still had our brother.  Allah willing
we will be able to take out as many officers that pull out
your parking structure.  It will be a plus to take part of
your american school across the street.  ISIS will have
revenge today.  It maybe a headshot from one of our snipers
maybe a grenade as they pull out parking building and stop
maybe explosive on one of the vehicles we were able to
access.  All praises due.  May Inglewood feel our wrath
today.  From 830 to 4pm we will destruct Inglewood sheriff.
The only safety they will have today is to stay inside
today.  If we see any patrol cars leave we will begin our
celebration of revenge.  All praises due.  Takbee! Takbeer!

Allah | infidels | M.muhammad@gmail.com

Reasonable people could and did believe the false and misleading information contained in these threats concerning explosives, which, if true would have constituted a violation of Title 18, United States Code, Section 2332a, involving weapons of mass destruction. Specifically, law enforcement conducted K9-assisted sweeps of the courthouse parking lots in search of suspicious packages, wires, and other explosives, and LASD deputies armed with assault rifles monitored the area.  If an explosive had been either found undetonated or detonated at the Inglewood Courthouse, then LASD would have evacuated the building.  Such an evacuation would have caused the snack bar, which purchases and sells goods that travel to California from locations out of state, to lose revenue, thus affecting interstate commerce.

4

Moreover, all of the threats defendant transmitted on May 15 and May 16, 2017 passed through Internet Protocol addresses located outside California before reaching the LASD Court Services Division website, and therefore were transmitted in interstate commerce. Due to closures of the Inglewood Courthouse resulting from defendant's threats, the LASD incurred at least $2,645.31 of losses in the form of overtime wages.

      3.   The May 23, 2017 Threat Resulting in the Evacuation of Company A

On May 23, 2017, defendant was having an argument with his stepdaughter, who worked at the Los Angeles office location of Company A.  Defendant used the Internet to intentionally convey to that office false and misleading information, namely, the following written threat, in order to disrupt his stepdaughter's work:

> All praises to Allah.  Today, we will detonate an explosive at your La Brea and Arbor Vitae location if our needs aren't met by your company.  ISIS.

Reasonable people could and did believe this false and misleading information, which, if true would have constituted a violation of Title 18, United States Code, Section 2332a, involving weapons of mass destruction.  Specifically, Company A's office manager sent all of Company A's employees home for the day and contacted law enforcement, which responded to the location to investigate.  Defendant sent this false and misleading information over the Internet from Los Angeles via Company A's website to computer servers located in Arizona and Virginia, thus affecting interstate commerce, including by causing Company A to suffer losses in the form of wages paid to employees who did not work of at least $3,510.

5

4.   <u>The May 25, 2017, False Report to the FBI Tip Line</u>

On May 25, 2017, defendant used the Internet to knowingly and willfully made a false writing and submitted it to the Federal Bureau of Investigation's ("FBI") online Tip Line, which contained a certification to the effect:  "The information I've provided on this form is correct to the best of my knowledge.  I understand that providing false information could subject me to fine, imprisonment, or both.  (Title 18, U.S. Code, Section 1001)."

Defendant's false writing stated:

> I worked for [R.E.] in the real estate field. Last night after work we stopped at bar for couple drinks. After a few drinks [R.E.] began to disclose personal information to me and how he makes his real money. [R.E.] stated to me he has over 75 explosives he uses to blow homes up and collect insurance from them. He really alarmed me when he told me for the right price he would supply ISIS with explosives even planting them for them. He made some sort of contact with some organization overseas. He said isis gave him instructions to send inglewood sheriff department bomb threats via email. I dont know if he went thru with it or not.  As we left he showed me 5 explosives in his trunk. He described them saying one could level a 3 story home to this one can level the staples center. I then caught w cab. Have quit my job.  And now moving. This man is dangerous. I never expected this from an older american man. I wish not to disclose my personal information. This is his information below.
>
> [Company Name]
>
> [Address]
>
> [Phone Number]
>
> [California Department of Real Estate Number]

Defendant knew these statements were false because (1) R.E. never told defendant that for the right price he would supply the designated foreign terrorist organization known as ISIS with explosives; (2) R.E. never told defendant that for the right price he would plant explosives for ISIS; (3) R.E. never told defendant that

6

ISIS had instructed R.E. to send bomb threats via email to the LASD's branch location in Inglewood; (4) R.E. never showed defendant explosives; and (5) R.E. never said that he possessed explosives that could destroy structures ranging in size from a three-story home to the Staples Center in Los Angeles, California.

**B.   The Restitution Agreement**

In his Plea Agreement, defendant agreed to make restitution at or before the time of sentencing (Plea Agreement ¶ 2.h.), and further agreed that the parties then believed that the applicable amount of restitution was approximately $6,605.31 (id. ¶ 6).

**C.   The Probation Office's Offense Level Calculation**

The Probation Office calculated defendant's base offense level as 12 pursuant to USSG § 2A6.1 (PSR ¶ 22), with a four level upward adjustment because the offense resulted in substantial disruption of governmental functions, namely the closure of a county courthouse (id. ¶ 25).   The Probation Office then calculated a three-level downward adjustment for timely acceptance of responsibility, (id. ¶¶ 29-30), for a total offense level of 13.

**D.   The Probation Office's Criminal History Calculation and
       Guidelines Range Determination**

As set forth in the PSR, the defendant has a 1995 felony conviction for receipt of stolen property, for which he was sentenced to three years' imprisonment; a 2006 felony conviction for grand theft, for which he was sentenced to 39 days in jail; and a 2012 misdemeanor conviction for driving with a suspended license, for which he was sentenced to 10 days in jail.  (PSR ¶¶ 40-42.)  The Probation Office thus calculated that the defendant had one criminal

1    history point and fell into Criminal History Category I at the time

2    of his offense.  (Id. ¶¶ 43-44.)

3          Based on defendant's offense level and criminal history

4    category, the Probation Office determined that defendant's Guidelines

5    range is 12 to 18 months' imprisonment.  (PSR ¶ 89.)

6          **E.    The Probation Office's Sentencing Recommendation**

7          Based on defendant's offense level and criminal history

8    category, the Probation Office recommends that defendant be sentenced

9    to a term of imprisonment of 12 months and one day, pay restitution

10   in the amount of $6,605.31, and be subject to a term of supervised

11   release of two years, among other terms and conditions of sentencing.

12   (Dkt. 28.)

13   **III. GOVERNMENT'S SENTENCING POSITION**

14         The government agrees with the Probation Office's calculations

15   including the offense level and criminal history computations.  The

16   government also concurs with the Probation Office's sentencing

17   recommendation, including its recommendation to sentence defendant at

18   a low-end Guidelines sentence and order that defendant pay

19   restitution in the amount of $6,605.31.

20         The statutory sentencing factors support a sentence of 12

21   months' imprisonment.  By transmitting in interstate a communication

22   containing a threat to injure the person of another, defendant's

23   conduct harmed the community, namely the law enforcement personnel

24   charged with protecting the Inglewood Courthouse, businesses and

25   persons employed at the courthouse and surrounding area, and members

26   of the public seeking justice there.  See 18 U.S.C. § 3553(a)(2)(A)

27   (sentence should "reflect the seriousness of the offense, [] promote

28   respect for the law, and [] provide just punishment for the

8

1    offense"). The total loss to those persons, as well as to the

2    persons subject to his other threats during the same period, totaled

3    $6,605.31. A low-end Guidelines sentence is sufficient, but no

4    greater than necessary, to accomplish the goals of sentencing set

5    forth in § 3553.

6         One aspect of the Probation Office's Guidelines calculation

7    merits further elaboration. As the Court may observe, USSG

8    § 2A6.1(b)(2)(A) provides that if "the offense involved more than two

9    threats . . . increase by 2 levels." The Probation Office determined

10   that this upward adjustment does not apply, notwithstanding the

11   multiple threats that defendant admitted pursuant to his Plea

12   Agreement. (PSR note 1; id. ¶¶ 32-37.)

13        The government acknowledges that defendant made a full-throated

14   admission to his misconduct, which supports the agreed-upon order of

15   restitution, and recognizes his cooperation with law enforcement,

16   early plea, and reportedly abject personal circumstances, including

17   that he was subject to eviction proceedings at the time he made the

18   threats. (See PSR ¶¶ 51, 57, 58, 60, 62) (defendant reported

19   physical abuse as a child, difficulty with his a spouse, and a

20   partner with mental and emotional disorders).

21        Defendant pleaded guilty at his change-of-plea hearing only to

22   Count Six of the 10-count Indictment. Count Six charged that the

23   First May 15, 2017 Threat violated 18 U.S.C. § 875(c). (PSR ¶ 1.)

24   Application Note 1 to USSG § 2A6.1 provides that threats subsequent

25   to the First May 15, 2017 Threat are not to be considered relevant

26   conduct under the Guidelines. That Application Note provides, in

27   pertinent part:

28

**Scope of Conduct to Be Considered.**—In determining whether subsections (b)(1), (b)(2), and (b)(3) apply, the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole.

As a result, the Probation Office takes the view that the only offense conduct that should be considered in determining defendant's Offense Level under USSG § 2A6.1(b)(2)(A) is the charged conduct and the only prior threat that he admitted, the May 12, 2017 threat. Because defendant's pleaded-to conduct does not involve "more than two threats," it does not trigger the two-level increase.

In the government's view, defendant engaged in a single campaign involving more than two hoax threats and a false statement intended (a) to thwart eviction proceedings taking place in the Inglewood courthouse and (b) to retaliate against the landlord pursuing the eviction.  The government also recognizes that the full range of defendant's conduct falls within the Court's purview under 18 U.S.C. § 3553.  Nonetheless, for the reasons discussed above, the government believes that, under § 3553, a 12-month sentence remains appropriate here.

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 12 months in prison, impose two years of supervised release, and further order defendant to pay restitution in the amount of $6,605.31, in addition to the other terms and conditions of sentencing set forth in the Probation Office's sentencing recommendation letter.